UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRIENDS OF MERRYMEETING BAY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKFIELD POWER US ASSET MANAGEMENT, LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Docket no. 2:11-cv-35-GZS |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the cross-motions for summary judgment filed by Brookfield Power US Asset Management, LLC and Hydro Kennebec, LLC (together, the "Defendants") (ECF No. 106) and Friends of Merrymeeting Bay and Environment Maine (together, the "Plaintiffs") (ECF No. 107). Because the Court previously dismissed Count I of Plaintiffs' Substituted Complaint (ECF No. 20) as moot (see Order On Renewed Motion To Dismiss, January 14, 2013), only summary judgment as to Count II of Plaintiffs' Substituted Complaint remains before the Court.[1] As explained herein, the Court GRANTS Defendants' Motion For Summary Judgment (ECF No. 106) as to Count II and DENIES Plaintiffs' Motion For Partial Summary Judgment (ECF No. 107) as to Count II.

---

[1] In addition, Plaintiffs and Defendants filed five motions in limine to exclude expert testimony (ECF Nos. 100, 101, 103, 104 and 105). Because those motions were not implicated in the Court's decision on the present motions for summary judgment as to Count II of Plaintiffs' Substituted Complaint (ECF No. 20) or the Renewed Motion To Dismiss (ECF No. 133), the motions in limine (ECF Nos. 100, 101, 103, 104 and 105) are DENIED AS MOOT. Also, Defendants requested oral argument related to the motions for summary judgment (ECF No. 140). As the Court stated in its Order On Renewed Motions To Dismiss, the Court determines that this matter can be decided without oral argument, and thus DENIES Defendant's Motion To Hear Oral Argument Pursuant To Local Rule 7(f) (ECF No. 140).

I.  **LEGAL STANDARD**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida–Gonzalez v. Tirado–Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson, 477 U.S. at 248) (additional citation omitted).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

Once the moving party has made this preliminary showing, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); see also Fed. R. Civ. P. 56(e). "Mere allegations, or conjecture unsupported in the record, are insufficient." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (quoting Rivera–Marcano v. Normeat Royal Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)); see also Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011) ("A

properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation.") (citations omitted). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (quoting In re Ralar Distribs., Inc., 4 F.3d 62, 67 (1st Cir. 1993)).

The above-described "standard is not affected by the presence of cross-motions for summary judgment." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) (citation omitted). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted); see also Alliance of Auto. Mfrs., 430 F.3d at 34 ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof.").

## II.  DISCUSSION

Both Plaintiffs and Defendants move for summary judgment on Count II of Plaintiffs' Substituted Complaint (ECF No. 20).[2]  Count II claims that Defendants, who hold the Federal Energy Regulatory Commission ("FERC") license for the Hydro Kennebec hydroelectric dam ("Hydro Kennebec dam") located on the Kennebec River, are violating the Clean Water Act by failing to comply with the water quality certificate for that dam.

The objective of the Clean Water Act ("CWA") is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  Accordingly,

---

[2]  The Court's discussion of the pending motions assumes familiarity with this Court's Order On Renewed Motion To Dismiss.  In that Order, the Court granted Defendants' motion to dismiss Plaintiffs' Endangered Species Act claim (Count I) as moot in light of the issuance of an incidental take statement.  The Court also denied Defendants' motion to dismiss Plaintiffs' claim (Count II) under the Clean Water Act as moot.

under the CWA, hydroelectric dams must obtain a state "water quality certification" before they may obtain a license to operate from FERC. 33 U.S.C. § 1341. The water quality certification then becomes a condition of the FERC license. Id. §1341(d).

Here, the Hydro Kennebec dam operates subject to the terms and conditions of a water quality certification originally issued in 1986 by the State of Maine pursuant to Section 401 of the Clean Water Act (Stipulations Of Fact (ECF No. 95) ("SF") ¶ 131). That water quality certificate contains the following provision:

> INTERIM DOWNSTREAM FISH PASSAGE: The applicant shall continue and where needed improve existing operational measures to diminish entrainment, allow downstream fish passage, and eliminate significant injury to out-migrating anadromous fish in accordance with the terms of the KHDG [Kennebec Hydro Developers Group] Settlement Agreement.

(SF ¶ 132.) The KHDG Settlement Agreement, in turn, provides:

> To the extent that licensee desires to achieve or continue interim downstream passage of out-migrating alewife, and /or juvenile Atlantic salmon or shad by means of passage through turbine(s), licensee must demonstrate, through site-specific qualitative studies designed and conducted in consultation with the resource agencies, that passage through turbine(s) will not result in significant injury and/or mortality (immediate and delayed). In the event that adult shad and/or adult Atlantic salmon begin to inhabit the impoundment above the . . . project, and to the extent that licensee desires to achieve interim downstream passage of out-migrating adult Atlantic salmon and/or adult shad by means of passage through turbine(s), licensee must first demonstrate through site-specific quantitative studies designed and conducted in consultation with the resource agencies, that passage through turbine(s) will not result in significant injury and/or mortality (immediate or delayed). In no event shall licensee be required to make this quantitative demonstration for adult shad and adult Atlantic salmon before May 1, 2006.

(SF ¶ 134.)

Defendants do not contest that the requisite site-specific quantitative studies have not been performed to show that turbine passage will not result in injury and/or mortality to the fish. Although Defendants contest whether adult salmon and shad "inhabit" the impoundment

upstream of the dam, Defendants concede that the fish may use the impoundment as a migratory route. (See Defs.' Opp'n To Pls' Mot. For Summary J. (ECF No. 113) at 17.) Nonetheless, assuming that adult salmon and shad do inhabit the impoundment upstream of the dam, the Court finds that Defendants are not violating the CWA because Defendants do not "desire" to achieve passage of the fish via the turbines.

Both Plaintiffs and Defendants urge different meanings of the following phrase in the Agreement: "To the extent licensee *desires* to achieve interim downstream passage of out-migrating Atlantic salmon and/or adult shad by means of passage through the turbine(s) . . . ." (SF ¶ 134, emphasis added.) Although Plaintiffs paint this clause as ambiguous and needing of the Court's interpretation, the relevant portion -- "to the extent licensee desires" -- is not ambiguous. See Waltman & Co. v. Leavitt, 722 A.2d 862, 864 (Me. 1999) ("When a contract is reasonably subject to two or more interpretations, or its meaning is unclear, it is ambiguous.") It is what the licensee, the Defendants, desire – or want – that triggers the remainder of the clause's requirements. The reasonable interpretation of this clause carries a subjective component. See, e.g., American Heritage Dictionary 491 (5th ed. 2011) (defining "desire" as "[t]o wish or long for; want: *a reporter who desires an interview; a teen who desires to travel*"). Plaintiffs challenge that subjective intent is not relevant and that Defendants could simply shut the turbines down during migration and thereby avoid the need to conduct the studies. This interpretation, however, ignores the plain language of the Agreement and reads the relevant words out of the Agreement. Because the clause is in the Agreement, the Court will give it effect. See OfficeMax v. Levesque, 658 F.3d 94, 99 (1st Cir. 2011) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which

leaves a part unreasonable, unlawful, or of no effect." (quoting Restatement (Second) of Contracts § 203(a))).

Alternatively, Plaintiffs attempt to substitute "knowledge" or "expectations" for "desire." That is, Plaintiffs argue that because Defendants know or expect that some Atlantic salmon and/or shad may be passing through the turbines, Defendants desire to have the fish pass through the turbines. Had the parties to the Agreement intended Defendants' knowledge or expectation of Atlantic salmon or shad passing through the turbines to trigger the requisite studies, the parties could have so stated.

The evidence before the Court on summary judgment reveals that Defendants do not desire to pass Atlantic salmon and/or shad through the turbines. Instead, the Defendants' desire is that the fish bypass the turbines. The Hydro Kennebec dam has a fish boom and turbine bypass route to allow Atlantic salmon and shad to bypass the dam without swimming through the turbines. (Bernier Dep. (ECF No. 89-7) at 59-60; Letter from Kevin Bernier dated March 5, 2007 (ECF No. 83-4) at 1.) Kevin Bernier, testifying for Defendants, stated that one reason Defendants installed the fishway in 2006 was to allow salmon to bypass the dam without passing through the turbines and "[t]o provide [the salmon] with a safe route downstream." (Bernier Dep at 59-60.) Moreover, the bypass was installed as an alternative to conducting the requisite studies, showing that Defendants did not "desire" to pass fish through the turbines. (See id.) Plaintiffs present evidence that Atlantic salmon and/or shad are in fact passing through the turbines and Defendants have not taken sufficient steps to prevent that passage. Even assuming the truth of the evidence, it is not germane to the Court's inquiry. Knowledge does not equate to desire. Accordingly, Defendants have demonstrated an absence of evidence to support the CWA

6

claim and Plaintiffs have failed to raise a genuine issue of material fact. Therefore, Defendants are entitled to summary judgment on Count II.

## V. CONCLUSION

For the reasons explained herein, Defendants' Motion For Summary Judgment (ECF No. 106) is GRANTED as to Count II. Plaintiffs' Motion For Partial Summary Judgment (ECF No. 107) is DENIED as to Count II. In addition, the motions in limine (ECF Nos. 100, 101, 103, 104 and 105) are DENIED AS MOOT.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 14th day of January, 2013.